# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| GREENINGTON, LLC,<br><br>*PLAINTIFF*<br><br>v.<br><br>UNITED STATES,<br><br>*DEFENDANT.* | Ct. No. 1:23-cv-00243-LWW |

## *PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION*

## *FOR SUMMARY JUDGMENT*

## TABLE OF CONTENTS

I. INTRODUCTION..................................................................... 1

II. BACKGROUND.................................................................... 1

III. SUBJECT MERCHANDISE.....................................................3

IV. QUESTIONS PRESENTED..................................................... 4

V. ARGUMENT.........................................................................5

   A. Jurisdiction and standard of review..........................5

   B. Summary judgment for Plaintiff is warranted...................... 6

   C. The Subject Merchandise is properly classified under HTSUS subheading 9903.88.67 as "household furniture of high-pressure laminated bamboo, other than babies' or children's furniture (described in statistical reporting number 9403.82.0015)................................................. 9

      *1. The exclusion language at issue................................. 9*

      *2. The common and commercial meaning of "high-pressure laminated bamboo" is bamboo bound together in layers under high pressure................................................................. 11*

      *3. CBP's position that "high-pressure laminated bamboo" means bamboo covered in a plastic laminate is erroneous and unpersuasive................................................................. 18*

      *4. Subject Merchandise fits the exclusion........................24*

VI. CONCLUSION................................................................. 27

## TABLE OF AUTHORITIES

**Cases**

Amity Leather Co. v. United States, 939 F.Supp. 891, 894, 20 C.I.T. 1049, 1052 (Ct. Intl. Trade, 1996)......................................................10, 12

Bausch & Lomb, Inc. v. United States, 148 F. 3d 1363, 1365 (Fed. Cir. 1998)..............................................................................................6, 7, 8

Boreno Sumatra Trading Co., v. United States, 311 F.Supp. 326, 330 (Cust. Ct. 1970)................................................................................12

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)....................................7

Conair Corp. v. United States, 2005 WL 1941649, 29 CIT 888, 890 (Ct. Int'l Trade 2005).......................................................................5

Kahrs Int'l, Inc. v. United States, 33 C.I.T. 1316, 1342 (Ct. Intl. Trade, 2009)..............................................................................................12

Goodman Mfg., L.P v. United States, 69 F.3d 505, 508 (Fed. Cir. 1995)...............................................................................................6

Len-Ron Mfg. Co. v. United States, 334 F.3d 1304, 1309 (Fed. Cir. 2003)..............................................................................................10

Norca Engineered Products, LLC v. United States, 2023 WL 4678997, at *2 (Ct. Intl. Trade, 2023).....................................................................6

Rollerblade, Inc. v. United States, 112 F.3d 481, 483 (Fed. Cir. 1997)....8

Rooster Products, Inc. v. United States, 24 CIT 357, 358 (Ct. Intl. Trade, 2000)................................................................................................6

Snell v. United Specialty Insurance Company, 102 F.4th 1208 (11th Cir. 2024)..............................................................................................15

Tate Access Floors v. Interface Architectural Res., Inc., 132 F. Supp. 2d 365, 367 (D. Md. 2001), aff'd sub nom. Tate Access Floors, Inc. v. Interface Architectural Res., Inc., 279 F.3d 1357 (Fed. Cir. 2002).........19

United States v. Deleon, 116 F.4th 1260 (11th Cir. 2024)......................15

Universal Electronics, Inc. v. United States, 112 F.3d 488, 491 (Fed. Cir. 1997)..............................................................................................6, 7

Vecoplan, LLC v. United States, 675 F. Supp. 3d 1263, 1269 (Ct. Int'l Trade 2023)......................................................................................6

**Statutes**

28 U.S.C. § 1581(a).................................................................................5

**Other Authorities**

Gen. R. Interp. 1, HTSUS (Rev. 1, 2026).................................................10

Fed. R. Civ. P. 56………………………………………………………………..7

Notice of Extensions for Reinstrated Product Exclusions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation, 87 Fed. Reg. 17380 (March 28, 2022)............2

Notice of Product Exclusions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation, 85 Fed. Reg. 6674 (Feb. 5, 2020)......................................................10, 22

Random Lengths Publ'ns, Terms of the Trade 192-93 (4th ed. 2000)....12

United States Court of International Trade Rule 56(c)..........................7

## I.  INTRODUCTION

Plaintiff Greenington, LLC ("Greenington" or "Plaintiff") herein submits its motion for summary judgment and supporting memorandum pursuant to Rule 56 of the Rules of this Court. For the reasons set forth herein, this Court should grant Greenington's motion for summary judgment, finding 1) that the common meaning of the term "high-pressure laminated bamboo" in the exclusion granted by the United States Trade Representative ("USTR") under HTSUS subheading 9903.88.67 refers to bamboo that is manufactured by bonding layers of bamboo together under high pressure; and 2) that the bamboo merchandise imported by Greenington and subject to the instant action ("Subject Merchandise")  meets the description in the exclusion and is, therefore, exempt from Section 301 duties.

## II.  BACKGROUND

Greenington is a U.S. importer of bamboo furniture manufactured in the People's Republic of China ("China"). Dkt. 20, ¶¶3, 10-11; Statement of Facts ("SOF"), ¶¶1, 7. Greenington entered the Subject Merchandise under HTSUS subheading 9403.82.0015 and claimed exclusion under HTSUS subheading 9903.88.67. Dkt. 20, ¶¶20, 26; SOF,

1

¶¶9, 16. The exclusion under HTSUS subheading is for "household furniture of high-pressure laminated bamboo, other than babies' or children's furniture (described in statistical reporting number 9403.82.0015)." See Notice of Extensions for Reinstrated Product Exclusions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation, 87 Fed. Reg. 17380 (March 28, 2022).

Greenington entered Subject Merchandise and claimed the exclusion from August 19, 2022, to October 12, 2022. Dkt. 20, ¶25-26; Dkt. 22, ¶25-26; SOF, ¶¶6, 16. On July 7, 2023, CBP issued a rate advance Customs Form ("CF") 29 to Greenington, disallowing the exclusion claimed for the Subject Merchandise. Dkt. 20, ¶27; Dkt, 20-2; Dkt. 22, ¶27; SOF, ¶17. CBP proceeded with rate advances on the entries referenced in the Complaint underlying the instant action. See Dkt. 20, ¶¶12 (table showing details for the entries at issue in this action), 31; Dkt. 22, ¶¶12, 31.

On September 11, 2023, Greenington timely filed protests for the fifteen (15) entries. Dkt. 20, ¶32; Dkt. 22, ¶32; SOF, ¶¶5, 28. CBP denied the protests on October 5, 2023. Dkt. 20, ¶32; Dkt. 20-4; Dkt. 22,

¶32; SOF, ¶29. As a result, Greenington was forced to pay Section 301 tariffs plus interest on the entries. Dkt. 20, ¶34; Dkt. 22, ¶34; SOF, ¶30. CBP's denial of the protests and insistence that the Subject Merchandise does not qualify for the exclusion under HTSUS subheading 9903.88.67 is based on an erroneous interpretation of the exclusion language. The denial is contrary to the common meaning of "high-pressure laminated bamboo."

## III.   SUBJECT MERCHANDISE

The bamboo furniture imported by Greenington includes bed frames, tables, chests, dressers, shelves, nightstands, and tables including desks, dining tables, console tables, and end tables. Dkt. 20, ¶11; SOF, ¶7. The bamboo furniture is constructed of high-pressure laminated bamboo. Dkt. 20, ¶11; SOF, ¶8. A full description of the production process can be found in Plaintiff's Second Amended Complaint. See Dkt. 20, ¶¶ 14-19.

Notably, bamboo strips are glued together and then placed in a hydraulic press to form panels. Id., ¶17; SOF, ¶8; see also **Exhibit A** Lin Dep. (April 11, 2025) at 15-23  (detailing the production of bamboo strips from harvested moso bamboo). The one-ply panels are formed by

3

gluing the bamboo strips horizontally and pressing both in the horizontal and vertical directions. Dkt. 20, ¶18; see also **Exhibit A** Lin Dep. at 23-28; (detailing the gluing and pressing process). The pressure in the horizontal direction is in the range of 12-14 MPa (1740 PSI-2030 PSI). Dkt. 20, ¶18. The pressure in the vertical direction is in the range of 9-10 MPa (1305-1450 PSI). Id. The press is maintained at 100°C, and the bamboo panels are pressed for 8-12 minutes. Id.

Multiple plies of bamboo are similarly made. Id., ¶19; see also **Exhibit A** Lin Dep. at 23-28. They are glued together and pressed in both horizontal and vertical directions. Dkt. 20, ¶19. The pressure in the horizontal direction is 9 MPa (1305 PSI). Id. The pressure in the vertical direction is in the range of 12-14 MPa ( 1740 PSI-2030 PSI). Id. Again, the press is maintained at 100°C and the bamboo panels are pressed for 8-12 minutes. Id.

## IV.    QUESTIONS PRESENTED

*In casu*, the issues are: 1) whether the common meaning of "high-pressure laminated bamboo" is bamboo that is laminated under high pressure or "HPL [high-pressure laminate] laminated atop an engineered bamboo substrate," Dkt. 20-3, at 1 (email from CBP to

4

Plaintiff's customs broker setting forth alleged criteria for the exclusion under HTSUS 9903.88.67); and 2) whether Greenington's bamboo furniture is high-pressure laminated bamboo.

## V.    ARGUMENT

### A. Jurisdiction and standard of review

This Court has exclusive jurisdiction over this action pursuant to 28 U.S.C. § 1581(a), as a civil action arising from the denial of a protest. Greenington timely filed the protests subject to this litigation on September 11, 2023, within 180 days of liquidation of each of the relevant entries. See Dkt. 20, ¶32; Dkt. 22, ¶32; SOF, ¶¶2, 5, 28. CBP denied Greenington's protests on October 5, 2023. Id.; Dkt. 20-4; SOF, ¶29. Greenington timely commenced the instant action within 180 days of October 5, 2023. Dkt. 1, 4. All duties, charges, and exactions assessed at liquidation in connection with the entries protested were paid prior to the commencement of the instant action. Dkt. 20, ¶34; Dkt. 22, ¶34; SOF, ¶30.

"Where jurisdiction is predicated on 28 U.S.C. § 1581(a), Customs' interpretation of an HTSUS tariff term, a question of law, is subject to de novo review." Conair Corp. v. United States, 2005 WL 1941649, 29

CIT 888, 890 (Ct. Int'l Trade 2005) (citation modified). The statutory presumption of correctness of CBP decisions set forth in 28 USC 2639(a)(1) is not applicable when a question of law is presented in a proper motion for summary judgment. See Rooster Products, Inc. v. United States, 24 CIT 357, 358 (Ct. Intl. Trade, 2000); Universal Elecs. Inc. v. United States, 112 F.3d 488, 492 (Fed. Cir. 1997); Goodman Mfg., L.P v. United States, 69 F.3d 505, 508 (Fed. Cir. 1995). "While the court affords deference to Customs' classification rulings relative to their power to persuade, it has an independent responsibility to decide the legal issue of the proper meaning and scope of HTSUS terms." Vecoplan, LLC v. United States, 675 F. Supp. 3d 1263, 1269 (Ct. Int'l Trade 2023) (citation modified).

### B. Summary judgment for Plaintiff is warranted

In an action challenging classification, summary judgment is appropriate "where there is no genuine dispute as to the underlying factual issue of exactly what the merchandise is," Bausch & Lomb, Inc. v. United States, 148 F. 3d 1363, 1365 (Fed. Cir. 1998), and "the classification turns on the proper meaning and scope of the relevant tariff provisions." Norca Engineered Products, LLC v. United States,

2023 WL 4678997, at *2 (Ct. Intl. Trade, 2023). When the record shows there is no genuine issue as to any material fact, the Court should grant summary judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also Fed. R. Civ. P. 56 and United States Court of International Trade Rule 56(c).

Whether the merchandise is properly classified under a heading is a question of law. Bausch & Lomb, 148 F. 3d, at 1365; Logitech, Inc. v. United States, 532 F.Supp.3d 1358, 1364 (Ct. Intl. Trade, 2021) ("First, the court ascertains the meaning of the terms within the relevant tariff provisions, which is a question of law."). Courts approach this question using a two-step analysis: (1) construe the relevant classification headings and (2) determine what the merchandise is and, therefore, under which of the properly construed tariff terms the Subject Merchandise falls. See Bausch & Lomb, 148 F. 3d, at 1365, Universal Electronics, Inc. v. United States, 112 F.3d, at 491.

In the instant matter, there is no genuine issue of material fact to be resolved by trial. Defendants do not contest the nature, characteristics, and use of the Subject Merchandise. See Dkt. 20, ¶20; Dkt. 22, ¶20 (Defendant admits that Plaintiff's merchandise was

correctly classified under HTSUS 9403.82.0015, thereby admitting that the Subject Merchandise is household furniture made of bamboo); SOF, ¶¶9-10. The sole issue herein pertains to the interpretation of the language used in the exclusion codified under HTSUS subheading 9903.88.67. See Bausch & Lomb, 148 F. 3d, at 1365-66; see also Rollerblade, Inc. v. United States, 112 F.3d 481, 483 (Fed. Cir. 1997) ("[The parties] agree that none of the pertinent characteristics of the merchandise is in dispute, and thus the sole issue is a matter of properly interpreting the classification term at issue … to determine whether the scope of that term is broad enough to encompass the items with the particular characteristics.").

The specific issue requests this Court resolve in the instant action is a legal one – whether the common meaning of "high-pressure laminated bamboo," used in the tariff provision 9903.88.67, refers to: A) household furniture made of bamboo that is laminated under high pressure; or B) to household furniture that is "made of lumber and sheet comprised of an HPL [high-pressure laminate] laminate atop an engineered bamboo substrate," Dkt. 20-3, at 1. Defendant concedes that this is a question of law. See Dkt. 20, ¶11 ("The bamboo furniture is

8

constructed of high-pressure laminated bamboo."); then see Dkt. 22, ¶11 ("The second sentence [of Dkt. 20, ¶11] consists of a legal argument and/or conclusions of law to which no response is required.").

As discussed below and in the attached Statement of Facts and Exhibits, CBP's rejection of Plaintiff's classification of the Subject Merchandise under subheading 9903.88.67 is contrary to law. The Subject Merchandise falls within the description of that subheading, in accordance with the common meaning of the terms therein. Therefore, summary judgment in favor of Plaintiff is warranted.

### C. The Subject Merchandise is properly classified under HTSUS subheading 9903.88.67 as "household furniture of high-pressure laminated bamboo, other than babies' or children's furniture (described in statistical reporting number 9403.82.0015)

#### 1. The exclusion language at issue

Contrary to the assertions of Defendant, the Subject Merchandise meets the description of the exclusion and is properly classified under 9903.88.67. The exclusion applies to "any product that meets the description in the Annex, regardless of whether the importer filed an exclusion request. Further, the scope of each exclusion is governed by the scope of the product descriptions in the Annex, and not by the product descriptions found in any particular request for exclusion." See

9

Notice of Product Exclusions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation, 85 Fed. Reg. 6674 (Feb. 5, 2020). The description in the annex is "household furniture of high-pressure laminated bamboo, other than babies' or children's furniture." Id. Both the words "high-pressure" and "laminated" qualify the word "bamboo."

The General Rules of Interpretation ("GRIs') of the HTSUS provides that "classification shall be determined according to the terms of the headings and any relative section or chapter notes." Gen. R. Interp. 1, HTSUS (Rev. 1, 2026). "HTSUS terms are construed according to their common and commercial meanings which are presumed to be the same absent contrary legislative intent." Len-Ron Mfg. Co. v. United States, 334 F.3d 1304, 1309 (Fed. Cir. 2003). The Court may use "its own understanding of the term used, and may consult dictionaries, scientific authorities, and other reliable sources of information" to determine the meaning of the terms. Amity Leather Co. v. United States, 939 F.Supp. 891, 894, 20 C.I.T. 1049, 1052 (Ct. Intl. Trade, 1996).

*2. The common and commercial meaning of "high-pressure laminated bamboo" is bamboo bound together in layers under high pressure.*

The exclusion at issue is available to household furniture made from "high-pressure laminated bamboo." The common and commercial meaning of this term is: bamboo that is formed from bamboo layers, bound together under high pressure. This definition is not only supported by lexicographical sources, but also by the learned opinions of forensic linguists and bamboo industry experts who have given their opinions in this case.

Beginning with definitional sources, the HTSUS does not define the terms at issue in the instant matter. Dictionaries, however, define "high-pressure" as a compound adjective meaning "having or involving a high or comparatively high pressure especially greatly exceeding that of the atmosphere." See *High-Pressure,* <u>Merriam-Webster Dictionary</u>, https://www.merriam-webster.com/dictionary/high-pressure (last visited Jan. 22, 2026); <u>see</u> <u>also</u> *High-pressure,* <u>Cambridge Dictionary</u>, https://dictionary.cambridge.org/us/dictionary/english/high-pressure (last visited Jan. 22, 2026).

11

"Laminated" is the past participle of "laminate" and is used as an adjective to describe the physical state of the noun following it - in this case, the noun is "bamboo." The verb "laminate" means "to bond together two or more pieces of wood to make a single piece, using adhesive and pressure." Random Lengths Publ'ns, Terms of the Trade 192-93 (4th ed. 2000); see also Kahrs Int'l, Inc. v. United States, 33 C.I.T. 1316, 1342 (Ct. Intl. Trade, 2009) (because the tariff heading at issue did not define the term "laminated," the Court resorted to their common definitions and applied "to make by uniting superposed layers of one or more materials as by means of an adhesive" as the meaning of "laminate."); Amity, 939 F.Supp. at 1053 (defining "laminated" as "composed of layers bonded together."). In Boreno Sumatra Trading Co., v. United States, 311 F.Supp. 326, 330 (Cust. Ct. 1970), laminated wood was defined as "constructions in which two or more layers of wood are fastened together with the grain of all plies or laminations parallel."

Defendant itself admits Merriam-Webster's Merriam-Webster Online Dictionary defines "laminated" as "[c]omposed of layers of firmly united material" and "[m]ade by bonding or impregnating superposed

12

layers (as of paper, wood, or fabric) with resin and compressing under heat." SOF, ¶24.

In summary, to meet the description, the merchandise must be laminated under high-pressure. In the tariff subheading description at issue, "high-pressure" is used to modify "laminated." Applying these same definitions of "high pressure" and "laminated," the common meaning of "high-pressure laminated bamboo" is therefore a construction made by uniting two or more superposed plies of bamboo to make a single piece of bamboo using adhesive and pressure.

Expert opinions support this conclusion. Greenington retained two forensic linguists and two forestry product experts in this case. Based on varying methodologies, each scholar reached the same conclusion: "high-pressure laminated bamboo" is bamboo bound together in layers under high pressure.

Dr. William Eggington is a forensic linguist and emeritus professor of English Language and Linguistics at Brigham Young University. Based on dictionary and corpus linguistics analysis, Dr. Eggington, agrees with Plaintiff's definition.

13

Dr. Eggington began by reviewing dictionary definitions and grammatical understandings of the terms at issue. Relying on Oxford English Dictionary and Merriam-Webster, Dr. Eggington found that "the common meaning of LAMINATED consists of layered material fused together." **Exhibit B**, at 9-10.

Then, Dr. Eggington employed corpus linguistics methodologies, that is, the analysis of language use patterns via large language collections, to investigate the common understanding of the terms at issue. By consulting the Corpus of Contemporary American English, a database of one billion words, Dr. Eggington concluded that, in the context of manufacturing, "the common meaning of LAMINATED aligns with Greenington's bonded and layered argument." Id., at 11. Ultimately, Dr. Eggington opined that "the common meaning of the term 'high-pressure laminated bamboo furniture' is a furniture product involving high-pressure bonded layers of bamboo." Id., at 12.

Dr. Alan Perlman, a forensic linguist with 47 years of experience, is in agreement. Dr. Perlman conducted a linguistic analysis using large language model AI tools[1] to discern the common meaning of

---

[1] Dr. Perlman explains in his report that large language models have changed the nature of common meaning analysis: "AI models are composed of various data sets, including large text corpora, speech recordings, or multilingual datasets. [ ]

"high-pressure laminated bamboo." **Exhibit C**, at 4-5. To do so, Dr. Perlman submitted the query "what is 'high pressure laminated bamboo'?" to various search engines and AI tools. Dr. Perlman posits that this process "finds the words and phrases that most often accompany the query phrase, and it puts them into sequential prose." Id. at 4.

Dr. Perlman's analysis returned "near unanimous consensus" among seven large language models that the common meaning of the term is bamboo "consisting of thin layers sealed together under high pressure." Id. at 9.

Dr. Kent Wheiler is an associate professor at the School of Environmental and Forest Sciences in the College of the Environment and Director of the Center for International Trade in Forest Products at the University of Washington, Seattle campus. Dr. Wheiler also has 30 years of experience in the forest products industry and two years of

---

Therefore, linguistic analysis conducted using AI is substantially similar to more traditional methods, it simply takes a fraction of the time." Id. The Hon. Kevin C. Newsom of the United States Court of Appeals, Eleventh Circuit, has penned two persuasive opinions that support the use of large language models in common meaning analysis. See Snell v. United Specialty Insurance Company, 102 F.4th 1208 (11th Cir. 2024) ((Newsom, J. concurring); and United States v. Deleon, 116 F.4th 1260 (11th Cir. 2024) (Newsom, J. concurring).

experience as a manager of multiple bamboo plantations. At deposition, Dr. Wheiler gave a concurring opinion to Drs. Eggington and Perlman.

In his expert report, he opined that "the term 'high-pressure laminated bamboo furniture' as commonly used implies furniture made with strips of real bamboo laminated together under high pressure." See **Exhibit E** at 3. He explained that HPL is commonly used to cover substrates like particleboard or medium/high-density fiberboard, Id. at 5, chipboard, and plywood, Id. A consumer desires bamboo furniture due to its eco-friendly nature, thus would expect it to be made of laminated genuine bamboo, not an imitation bamboo made with paper (HPL). Id. at 7. He arrived at the conclusion that CBP's interpretation of that the exclusion requires the use of carbon, eco non-friendly HPL is unreasonable. Id. at 8.

Dr. Wheiler opined that bamboo is treated as a wood product under the HTSUS. See **Exhibit D,** Wheiler Dep. (February 2, 2026) 24:24-25; 25:1-3. Dr. Wheiler later testified that the term "laminated bamboo" "is always used as [ ] meaning laminated together, the same as laminated wood." **Exhibit D,** Wheiler Dep, 29:10-12. He further affirmed that, in his expert opinion, there is no difference between high

16

pressure laminated bamboo and laminated bamboo. <u>Id.</u> 75:15-18. The common meaning of "laminated bamboo" refers to a manufacturing process wherein bamboo is laminated together. <u>Id.</u> 29:5-13. It follows that the common meaning of "high-pressure laminated bamboo" must therefore be a construction made by uniting two or more superposed plies of bamboo to make a single piece of bamboo using adhesive and <u>high</u> pressure.

Dr. Changhua Fang is a full professor at the International Center for Bamboo and Rattan (ICBR) with a Ph.D. in Wood Science and Technology. Dr. Fang is currently occupied with the research and development of bamboo engineering materials. Dr. Fang reached a similar conclusion to the above experts in his report.

Dr. Fang's report relies on International Organization for Standardization (ISO) standards 7567 (Exhibit 1 to Fang Expert Report), 6128 (Exhibit 2 to Fang Expert Report), and 21625 (Exhibit 3 to Fang Expert Report). These international standards, Dr. Fang states, describe "laminated bamboo" as being manufactured by "bonding of bamboo strips with parallel fibers." **Exhibit F** at 2.

17

Therefore, dictionaries, linguistic corpora, large language models, industry experts, and international standards all agree that "high-pressure laminated bamboo" commonly means bamboo that is bonded in layers under high pressure.

>    *3. CBP's position that "high-pressure laminated bamboo" means bamboo covered in a plastic laminate is erroneous and unpersuasive.*

CBP's insistence that "high-pressure laminated bamboo" must be interpreted as "lumber and sheet comprised of an HPL laminate atop an engineered bamboo substrate" is erroneous. See Dkt. 20-3, at 1. CBP conflates "high-pressure laminated," the language from the exclusion, with "high pressure laminate," which is not mentioned in the exclusion. When asked to describe the basis for determining the Subject Merchandise is not eligible for the exclusion under HTSUS 9903.88.67, Defendant stated "CBP based its construction of the phrase on definitions of and usages of the term 'high-pressure laminate'" and proceeded to cite several definitions and descriptions of the term "high-pressure laminate." **Exhibit G** at 2. CBP conveniently conflates the term "high-pressure laminated" with "high-pressure laminate," even

18

though it acknowledges that the exclusion covers "high-pressure laminated bamboo" and not "high-pressure laminate." SOF, ¶23.

"High pressure laminate" ("HPL") refers to "a sheet of plastic produced by 'saturating multiple layers of kraft paper with phenolic resin with a layer of printed décor paper placed on top of the kraft paper before pressing' and fusing together the kraft paper and the printed decorative paper 'under heat and pressure (more than 1,000 PSI).'" See Tate Access Floors v. Interface Architectural Res., Inc., 132 F. Supp. 2d 365, 367 (D. Md. 2001), aff'd sub nom. Tate Access Floors, Inc. v. Interface Architectural Res., Inc., 279 F.3d 1357 (Fed. Cir. 2002).

The phrases "high pressure laminate" and "high-pressure laminated" have different meanings.

"High-pressure laminated" is a compound adjective used in this case to describe bamboo, wherein "laminated" describes the process performed on the bamboo and "high-pressure" describes the condition under which the bamboo was laminated.

"High pressure laminate" is a fixed compound noun wherein "high pressure" describes the noun, "laminate".

19

The former consists of two adjectives, "high-pressure" and "laminated," used to describe the bamboo and refers to the manufacturing process of a specific natural material. The latter consists of an adjective, "high pressure," used to describe a noun, "laminate," i.e., laminate surface material – a unique article of commerce consisting of an engineered product applied to surfaces.

CBP's interpretation of "high-pressure laminated bamboo" requires that the bamboo be *laminated*, meaning covered by, or overlaid with, a *high pressure laminate*. In this interpretation, "high-pressure laminated" is a single adjectival phrase, describing bamboo that has been covered in a high pressure laminate. In other words, CBP requires high-pressure laminate *laminated* bamboo.

CBP's interpretation is erroneous because it requires that bamboo be laminated, not as wood products are laminated—by bonding in layers—, but instead as driver's licenses or children's art projects are laminated—by covering in plastic. CBP's interpretation of the exclusion is unsupported by dictionary definitions and industry standards, and is refuted by the opinions of Plaintiff's experts.

20

At deposition, CBP could not identify any dictionary entries or industry standards that support the position that qualifying bamboo furniture must be covered by a high pressure laminate. CBP admitted that no dictionary sources were consulted to support this interpretation. See **Exhibit H**, Dougherty Dep. (March 26, 2025), 97:7-21; 98:1-6 . Additionally, CBP admitted that the industry sources it consulted in forming this interpretation discuss high pressure laminates, but make no mention of bamboo. See Id. 89-90, 98-103.

Finally, in Defendant's Responses To Plaintiff's First Interrogatories Directed To Defendant, CBP states the following, *inter alia*, in response to Interrogatory No. 1:

> **INTERROGATORY NO. 1**: *Please describe in detail your basis for determining that the Subject Products do not meet the terms and conditions for the Subject Exclusion.*
>
> **RESPONSE TO INTERROGATORY NO. 1:**
>
> *…In addition, the subject exclusion was granted to Home Furnishings Resource Group, which requested the exclusion for furniture that is composed of an engineered bamboo substrate that has been covered with high-pressure laminate…*

See **Exhibit G** at 3. At deposition, CBP attempted to qualify this answer, but nonetheless admitted that a national import specialist contacted the party that requested the exclusion to inform CBP's

21

understanding of the exclusion language. See **Exhibit H**, Dougherty Dep. 76:11-17. Nonetheless, CBP then admitted that it "came to [its] decision … based on the terms of the actual specific request [i.e., Home Furnishings Resource Group's request] …" Id. at 77:1-6. However, the scope of each exclusion is governed by the scope of the product descriptions in the Annex, and not by the product descriptions found in any particular request for exclusion. See Notice of Product Exclusions, 85 Fed. Reg. at 6674. Therefore, by basing its determination on Home Furnishings Resource Group's exclusion request, CBP erred.

Turning to lexicographical sources and industry standards, these factors cut against CBP's interpretation and favor the Plaintiff's. Dr. Eggington said in his report "[g]iven this overwhelming evidence derived from dictionaries, it is difficult to conclude that LAMINATED means anything other than Greenington's process and that the Government's understanding of LAMINATED is flawed." **Exhibit B** at 10. Then, later discussing the linguistic corpora, Dr. Eggington said:

> [T]he majority of examples indicate that a contemporary and common use of LAMINATED is the hard plastic covering that can encase a document or card that users would like preserved. Given the commonality of laminated cards and processes, one can understand why the government would take such a position. However, going deeper into this corpus

22

> analysis, reveals that the surface-covering understanding of LAMINATED, however common, is restricted to a non-manufacturing context. The context of this research is to examine the meaning of LAMINATED within a manufacturing process that creates "high-pressure laminated bamboo furniture"…within the manufacturing industry, the common meaning of LAMINATED aligns with Greenington's bonded and layered argument.

Id. at 11.

Therefore, while "laminated" can mean a plastic covering, this usage is confined to the context of preserving papers and documents. When used in the context of manufacturing furniture, "laminated" refers to wood products, bonded together in layers.

Furthermore, Dr. Wheiler testified at deposition that no one in the wood products industry would say high pressure laminated bamboo furniture refers to an HPL on top of engineered bamboo. See **Exhibit D** Wheiler Dep. 55:9-14. To support his opinion, he noted that the article descriptions for HTSUS codes 4410110020 and 4410110030 reference "surface-covered" particle board with "melamine-impregnated paper" and with "decorative laminates of plastic," respectively. Id. at 71:8-25; 72:1-17. When HTSUS codes refer to articles with surfaces covered with decorative paper, i.e., laminates, the articles are described as surface covered. Id. The exclusion at issue does not mention a surface covering.

23

Dr. Wheiler also testified that bamboo is an inappropriate substrate for high pressure laminates:

*So I found no case where anybody talked about laminating the bamboo [with high pressure laminate], which makes sense to me for two reasons: One is because of that reason, [ ] the swelling differential and they prefer a smooth surface like particle board or MDF. But the other reason is because bamboo plywood, bamboo laminated wood is very expensive, like ten times the price of MDF or particle board. And it's a very natural, beautiful appearance. People pay a lot of money to get natural bamboo appearance. And no one is going to put a fake – Because you know HPL is paper, right? It's a pattern -- it's a picture that's soaked in resin and pressed together and creates the laminate. It looks nice, but no one is going to put a fake picture over top of the real thing. And so I found not a single example of anyone talking about a laminate on bamboo.*

Id. 27:3-21. Dr. Fang agrees. *See* **Exhibit F**, at 4 ("[N]one of these [ISO] standards stipulate the inclusion of a high-pressure laminate (HPL) layer for a product to be classified as laminated bamboo").

For these reasons, CBP's proposed definition is not persuasive, as lexicographical and industry sources refute it.

*4. Subject Merchandise fits the exclusion*

In accordance with the plain language of the exclusion, the furniture must meet the following criteria to be eligible for the exclusion:

1) Be for use in households;

2) Be made of bamboo:

    a) laminated under high-pressure; and

3) Not be intended for babies or children.

There is no debate as to whether the Subject Merchandise is household furniture, other than babies' or children's furniture. See Dkt. 22, ¶30 (admitting that the reason for CBP's determination that Plaintiff's merchandise did not qualify for the relevant exclusion was that the merchandise did not correlate to the very specific construction method that is required for the trade remedy); see also Dkt. 20, ¶30, Dkt. 20-3; SOF, ¶20.

Furthermore, Defendant acknowledges that Plaintiff correctly classified the Subject Merchandise under 9403.82.0015 as "Other furniture and parts thereof: Furniture of other materials, including cane, osier, bamboo or similar materials: of bamboo: Other household." See Dkt. 22, ¶20 ("To the extent that a response is required, admits the merchandise was properly classifiable under Harmonized Tariff Schedule of the United States (HTSUS) code 9403.82.0015."); SOF, ¶9. Thus, Defendant has raised no objection as to Subject Merchandise

25

meeting criteria 1 and 3.  Dkt. 20, ¶30, Dkt. 20-3, Dkt. 22, ¶¶20, 30; SOF, ¶¶9, 20.

The only issue that remains is whether the Subject Merchandise satisfies criterion 2. Because Plaintiff has set out the correct common meaning of "high-pressure laminated bamboo" above, the issue then becomes whether the Subject Merchandise is made from bamboo, bound together in layers under high pressure.

The Subject Merchandise is formed from laminated bamboo, i.e., multiple layers of bamboo strips or sheets formed under pressure in the range of 1300 PSI to 2030 PSI. Dkt. 20, ¶¶18-19. Moreover, CBP's own definition of HPL suggests that pressure higher than 1000 PSI is considered "high pressure." Dkt. 20-3, at 1; SOF, ¶19. Thus, Plaintiff's laminated bamboo, which is formed under pressure greater than 1000 PSI is unequivocally formed under high pressure. These facts have not been genuinely disputed by CBP.

Therefore, Plaintiff's merchandise falls squarely within the exclusion granted by USTR under HTSUS subheading 9903.88.67 for "household furniture of high-pressure laminated bamboo, other than babies' or children's furniture." CBP erred in its interpretation of

26

"high-pressure laminated" as limited to products with high-pressure laminates.

## VI.    CONCLUSION

For all the reasons stated herein, we respectfully request this Court grant Plaintiff Greenington, LLC's motion and enter summary judgment in favor of Plaintiff, order Defendant to reliquidate the entries covered by this action with a refund of all duties overpaid, plus interest, as provided by law, order Defendant to approve protests filed by Plaintiff regarding the eligibility of products identical to or substantially similar to Subject Merchandise for the exclusion under HTSUS 9903.88.67 that are currently suspended pending the outcome of this litigation, and provide such other relief as this Court deems just and proper.

Dated: April 7, 2026

Respectfully submitted,

**LIANG + MOONEY, PLLC**
/s/ Shanshan Liang
Shanshan Liang, Esq.
Fla. Bar No. 112991
sliang@customscourt.com
Johnathan W. Foege
Florida Bar No. 1047550
jfoege@customscourt.com
2104 Delta Way, Suite #1
Tallahassee, FL 32303
Telephone: (850) 893-0670
*Counsel for Plaintiff Greenington, LLC*

28

## Certificate of Compliance with Word Limitation

I hereby certify that the document contains 4972 words, excluding the parts of the document that are exempted from the word count, and therefore is in compliance with the word limitations set forth in this Court's Chambers Procedures.

Executed: April 7, 2026

/s/ Shanshan Liang
Shanshan Liang, Esq.

29

## CERTIFICATE OF SERVICE

A true and accurate copy of the foregoing was electronically filed on April 7, 2026, via the Court's ECF filing system, which automatically serves notice on counsel of record.

<u>/s/ Shanshan Liang</u>
Shanshan Liang, Esq.

30